## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Miguel Mendez,

|                          |                                |
|--------------------------|--------------------------------|
| Plaintiff,               | Case No. 15-cv-12301           |
| v.                       | Judith E. Levy                 |
|                          | United States District Judge   |
| FedEx Express and AETNA, |                                |
|                          | Mag. Judge Anthony P. Patti    |
| Defendants.              |                                |

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [17], DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [20], AND ORDERING ADDITIONAL BRIEFING

Miguel Mendez sued FedEx Express and Aetna, alleging that they denied his claim for long-term disability benefits in violation of the Employee Retirement Income Security Act of 1974. Because Mendez was denied benefits to which he is clearly entitled, Mendez's motion for summary judgment is granted, FedEx Express's and Aetna's motion for summary judgment is denied, and additional briefing is ordered regarding back-due benefits, applicable interest, and any other costs and fees that are appropriate.

## I.   Background

Plaintiff Miguel Mendez worked as a delivery driver for defendant FedEx Express for approximately twenty-eight years until an auto-accident in July 2012.  Mendez was covered by FedEx Express's long-term disability plan, which is governed by ERISA.  Defendant Aetna was the claims paying administrator of FedEx Express's plan, which provided Aetna with "sole and exclusive discretion . . . with respect to all matters . . . relating to the eligibility of a claimant for benefits under the Plan."  (Dkt. 19-5 at 4-5.)

On July 14, 2012, Mendez collided with an oncoming truck while riding a motorcycle, causing severe orthopedic injuries (for example, a crushed comminuted fracture, or splintering, of his pelvis) and mild traumatic brain injury ("TBI").  (*See* Dkt. 19-3 at 327.)  Aetna paid Mendez short-term disability benefits from July 23, 2012, to January 20, 2013, when he began receiving long-term disability benefits under the Plan's Occupational Disability definition, based on his inability to work in his previous position.  (*See* Dkt. 19-2 at 2.)  Aetna paid Mendez long-term Occupational Disability benefits for the full available time period, two years, from January 21, 2013, to January 20, 2015.  (*See id.*)

2

During that time, the Plan also required Mendez to apply for Social Security Disability Income ("SSDI"). (*See* Dkt. 19-4 at 103.) Mendez applied, and in May 2013, the Social Security Administration determined that Mendez was totally disabled and awarded him SSDI. (Dkt. 19-3 at 124.)

In July 2014, Aetna informed Mendez that "in order to receive more than [the] 24 months of LTD benefits" available for an Occupational Disability, he was required to "meet the definition of Total Disability." (*See* Dkt. 19-2 at 4.) Under the Plan, a Total Disability is "the complete inability . . . , because of a medically-determinable physical or functional impairment (other than an impairment caused by a mental or nervous condition or a Chemical Dependency), to engage in any compensable employment for twenty-five hours per week." (Dkt. 19-5 at 42; *see* Dkt. 19-1 at 2.)

Mendez submitted medical records regarding the treatment he received shortly after his accident, when he underwent two significant orthopedic surgeries in a matter of days. On July 16, 2012, Dr. Alfred Faulkner, D.O., performed the following procedures for Mendez's multiple comminuted fractures: "[c]losed reduction and application of

distal femoral traction pin to the right femur," "[c]losed reduction of bilateral superior and inferior pubic rami fractures with application of anterior pelvic external fixator," "[i]liosacral screw fixation of right vertical shear pelvic injury," and "[l]eft iliosacral screw placement for ____ posterior left pelvis." (Dkt. 19-2 at 120-21.)  On July 19, 2012, Dr. Faulkner performed the following additional procedures on Mendez: "[o]pen reduction and internal fixation of right anterior column acetabulum fracture," "[o]pen reduction and internal fixation of pubic symphyseal disruption," and "[o]pen reduction and internal fixation of left superior and inferior pubic rami fracture." (*Id.* at 132-33.)

Mendez also submitted medical records regarding his longer-term treatment at the TBI unit at Oakwood Heritage in Taylor, where he was in residential rehabilitation from July 23, 2012, until August 15, 2012, (see *id.* at 134-35), when he was transferred to Special Tree, another nursing and rehabilitation center.  (*See id.* at 154-84.)  On December 12, 2012, Dr. Adam Pourch, D.O., and Dr. Jay Methaler, M.D., diagnosed Mendez with a TBI.  (*Id.* at 182-84; *see also id.* at 201 ("University Physician Group 2/6/2013 . . . .  TBI injury with poly

4

trauma.").)   He was released from rehabilitation at Special Tree on December 15, 2012.

Aetna submitted only some of Mendez's medical records to Dr. Martin Mendelssohn, a retired orthopedic surgeon, for a file review. (*See* Dkt. 19-3 at 105-07.)   Aetna did not request an in-person examination of Mendez.   Dr. Mendelssohn concluded that there were insufficient objective findings that Mendez could not work at least twenty-five hours per week (*id.* at 107), so Aetna denied Mendez's long-term Total Disability claim.  (Dkt. 19-2 at 4.)  Aetna did not address the Social Security Administration's decision to grant Mendez disability benefits, even though Aetna had been offsetting Mendez's Occupational Disability benefits since he had begun receiving SSDI.

Mendez appealed the decision to the Aetna Appeal Review Committee.  Aetna again submitted Mendez's medical and other records to physicians for a file review, but still did not request an in-person examination.  (Dkt. 19-3 at 108-17.)  Dr. James Wallquist, an orthopedic surgeon, concluded that there was insufficient objective medical evidence to show that Mendez could not work at least twenty-five hours per week.  (*Id.* at 110-12.)  Dr. John P. Shallcross, a neuropsychologist,

5

concluded the same, finding that there was no documentation of Mendez's "mental and nervous condition from 5/3/13 forward," and "no assessment of [Mendez]'s psychiatric state sufficient to diagnose an Adjustment Disorder." (*Id.* at 115-17.) Thus, in March 2015, the Review Committee upheld the denial of Mendez's Total Disability claim. (Dkt. 19-1 at 2-4.)

The Review Committee addressed the Social Security Administration's award of SSDI as follows:

> The Committee noted your client has received a disability determination from the Social Security Administration. However, the criteria utilized by the Social Security Administration for the determination of Social Security disability awards are different from the definition for Total Disability set forth in the Plan, and that [*sic*] the Committee has a duty to follow the terms of the Plan.
>
> It is recognized your client was awarded Social Security Disability Benefits in May 2013; however Aetna has received more recent documentation from your client's providers which we have taken into consideration in making our determination.

(*Id.* at 4.)

6

## II.   Standard

Summary judgment in an ERISA case requires the Court to conduct "a *de novo* review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly." *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 1998) ("Because this court's precedents preclude an ERISA action from being heard by the district court as a regular bench trial, it makes little sense to deal with such an action by engaging a procedure designed solely to determine whether there is a genuine issue for trial."). Here, however, the review is whether the plan administrator's decision was arbitrary and capricious, because the administrator had "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

Under the arbitrary and capricious standard, this Court upholds the administrator's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (internal quotation marks omitted). The Court considers the quality and quantity of the medical evidence; the existence of any conflicts of interest; whether the

administrator considered any disability finding by the Social Security Administration; and whether the administrator contracted with physicians to conduct a file review as opposed to a physical examination of the claimant. *Bennett v. Kemper Nat'l Servs., Inc.*, 514 F.3d 547, 552-53 (6th Cir. 2008); *see Fura v. Fed. Express Corp. Long Term Disability Plan*, 534 F. App'x 340, 342 (6th Cir. 2013).

## III.   Analysis

The Aetna Appeal Review Committee affirmed the initial decision to deny Mendez's claim for long-term disability benefits under the Total Disability definition of the Plan.   Several issues during the process show that Aetna's decision was arbitrary and capricious.

First, Aetna conducted no in-person evaluation at any level, instead relying on file reviews.   "[T]here is nothing inherently improper with relying on a file review, even one that disagrees with the conclusions of a treating physician." *Calvert v. Firstar Fin. Inc.*, 409 F.3d 286, 297 n.6 (6th Cir. 2005).   But the Sixth Circuit has held that "the failure to conduct a physical examination, whe[n] the Plan document gave the plan administrator the right to do so, 'raise[s] questions about the thoroughness and accuracy of the benefits

8

determination.'" *Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 550 (6th Cir. 2015) (quoting *Helfman v. GE Grp. Life Assurance Co.*, 573 F.3d 383, 393 (6th Cir. 2009)).  This is especially troubling given that the physicians Aetna hired to conduct a file review here noted and then disregarded the extensive complaints of severe pain recognized by Mendez's treating physicians.  (Dkt. 19-3 at 106, 111-12); *see Shaw*, 795 F.3d at 550 (quoting *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 663 (6th Cir. 2013)).

This included evidence from a September 11, 2014 visit with Natasha Smith in physical medicine and rehabilitation at Wayne State University Physician Group, when Mendez "reported chronic daily pain in the pelvis, right leg[,] and shoulders"; "numbness over the left lateral femoral cutaneous and . . . continued . . . pain in the right and left groin"; "tenderness to palpation over the bilateral sacroiliac (SI) joints and right acromioclavicular (AC) joint"; and "decreased sensation in both lower extremities at L5-S1 and in bilateral lateral femoral cutaneous nerves." (Dkt. 19-1 at 3.)  And at a December 18, 2014 visit with Dr. Jay Maythaler, for "follow up of traumatic brain injury, neck pain, back pain, headaches, leg pain[,] and pelvic pain," Mendez

reported "increased chronic daily pain in the pelvis, right leg[,] and shoulders," "frequent muscle spasms in his back that lasted for several days," and "burning pain in his left thigh." (*Id.*)

Remarkably, without having conducted an in-person medical evaluation, the Review Committee notes the objective medical evidence that Mendez "has sustained a fractured pelvis, acetabular fractures, is status post open reduction and internal fixation, has a diagnosis of traumatic brain injury and late effects of traumatic brain injury, right AC joint separation, left first rib fracture, neuropathic pain of the bilateral lower extremities, chronic back pain and insomnia," yet concludes that "there are no significant objective findings to support an inability to perform a sedentary job for a minimum of twenty five hours per week." (*Id.* at 4; *see, e.g.*, Dkt. 19-3 at 111(Dr. Wallquist noting an MRI that "apparently revealed the L5 area was 'compromised'")).

And in any case, Aetna could not ignore Mendez's extensive complaints of pain, even if they were "subjective." "Complaints of pain necessarily are subjective as they are specific to the patient and are reported by the patient." *James v. Liberty Life Assurance Co.*, 582 F. App'x 581, 589 (6th Cir. 2014). Implicit in the Review Committee's

10

decision is a determination that Mendez's subjective complaints of severe pain lacked credibility.  But "without ever examining [Mendez], the Plan should not have made a credibility determination about [hi]s continuous reports of pain."  *See Shaw*, 795 F.3d at 550; *see, e.g.*, *Godmar v. Hewlett-Packard Co.*, 631 F. App'x 397, 407 (6th Cir. 2015) ("[The administrator] decided that [plaintiff]'s pain was subjective without examining him, and that failure weighs in favor of a determination that the denial of his claim was arbitrary and capricious.").

Second, and relatedly, Aetna's reviewing physicians were repeat players that have a material, if not necessarily disabling, conflict of interest.  "[P]hysicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employers money and to preserve their own consulting arrangement." *Shaw*, 795 F.3d at 550-51 (quoting *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 620 (6th Cir. 2006)).  Dr. Martin Mendelssohn,[1] Dr. James

---

[1] *See, e.g.*, *Mendelblatt v. Aetna Life Ins. Co.*, No. 14-cv-12140, 2016 U.S. Dist. LEXIS 21400, at *24-25 (E.D. Mich. Feb. 22, 2016); *Morris v. Am. Elec. Power Sys. Long-Term Disability Plan*, No. 2:07-cv-183, 2008 U.S. Dist. LEXIS 82829, at *30-31 (S.D. Ohio Sep. 30, 2008); *Cox v. UPS Health & Welfare Package*, No. 1:06-cv-401, 2007 U.S. Dist. LEXIS 69316, at *5-6 (S.D. Ohio Sep. 19, 2007); *Davis v. Broadspire Servs.*, No. 04-CV-74792-DT, 2006 U.S. Dist. LEXIS 72018, at *21-23 (E.D. Mich.

Wallquist,[2] and Dr. John P. Shallcross[3] are all repeat players among ERISA benefit plan administrators.  This does not automatically render Aetna's decision arbitrary and capricious, but it is a factor that weighs against Aetna.  *See Bennett*, 514 F.3d at 552-53.

Third, Aetna did not adequately explain why the Social Security Administration's decision to award Mendez SSDI benefits should be distinguished.  As noted above, the first-level reviewer did not mention the Social Security Administration's decision.  And when it was addressed by the Review Committee on appeal, Aetna provided only conclusory observations that "the criteria utilized by the Social Security Administration for the determination of Social Security disability

Mar. 23, 2006); *Stano v. Lumbermens Mut. Cas. Co.*, No. 06-CV-10842-DT, 2007 U.S. Dist. LEXIS 3535, at *9 (E.D. Mich. Jan. 18, 2007); *Jones-Stott v. Kemper Lumbermans Mut. Cas. Co.*, No. 04-CV-40263-FL, 2007 U.S. Dist. LEXIS 15294, at *11-12 (E.D. Mich. Jan. 12, 2007).

[2] *See, e.g.*, *Fura v. Fed. Express Corp. Long Term Disability Plan*, 534 F. App'x 340, 341 (6th Cir. 2013) (holding that reliance on Dr. Wallquist file review, among others, arbitrary and capricious in light of records from treating physicians); *Shedrick v. Marriott Int'l, Inc.*, No. 11-820, 2012 U.S. Dist. LEXIS 22635, at *13-14 (E.D. La. Feb. 22, 2012; *Wooden v. Alcoa, Inc.*, No. 3:11 CV 525, 2012 U.S. Dist. LEXIS 11407, at *5 (N.D. Ohio Jan. 31, 2012); *Harper v. Aetna Life Ins. Co.*, No. 10-1459, 2011 U.S. Dist. LEXIS 34848, at *7 (E.D. Pa. Mar. 31, 2011); *Farler v. Henry Ford Health Sys.*, No. 04-74368, 2005 U.S. Dist. LEXIS 13313, at *20 n.10 (E.D. Mich. July 5, 2005); *Hufford v. Harris Corp.*, 322 F. Supp. 2d 1345, 1351-52 (M.D. Fla. 2004).

[3] *See, e.g.*, *Gardner v. Metro. Life Ins. Co.*, 8 F. Supp. 3d 677, 683 (E.D. Pa. 2014); *Kushner v. Lehigh Cement Co.*, 572 F. Supp. 2d 1182, 1186 (C.D. Cal. 2008); *Moore v. Can. Life Assur. Co.*, No. 1:02-cv-102, 2003 U.S. Dist. LEXIS 14069, at *4-5 (E.D. Tenn. May 16, 2003); *Gough v. Metro. Life Ins. Co.*, No. 3:03-0158, 2003 U.S. Dist. LEXIS 25252, at *18-19 (M.D. Tenn. Nov. 21, 2003).

awards are different from the definition for Total Disability set forth in the Plan," and "more recent documentation from [Mendez]'s providers [were] taken into consideration."

Aetna's discussion of the Social Security Administration decision is not sufficient to meet the requirement that the administrator's decision be supported by substantial evidence *and* "the result of a deliberate, principled reasoning process." *Glenn*, 461 F.3d at 666. The Review Committee should have explained *why* a different determination should result from the difference in the disability definitions or the "more recent" documentation. *Bennett*, 514 F.3d at 554 ("[I]f the plan administrator (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) *fails to explain why* it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary or capricious.") (emphasis added).

"A casual mention of a disability determination is insufficient to constitute an 'explanation' in accordance with *Bennett*." *Wooden v. Alcoa, Inc.*, 511 F. App'x 477, 484 (6th Cir. 2013) (noting there, like

here, the Plan required LTD applicants to apply for SSDI and benefited financially because of the offset). Aetna's "cavalier treatment of [Mendez]'s SSA determination weighs in favor of finding [Aetna]'s denial of benefits to be arbitrary and capricious." *See id.* at 485.

The Aetna Appeal Review Committee did not conduct an in-person medical examination of Mendez. Rather, the Review Committee relied on file reviewers who are repeat hires among ERISA plan administrators to discount extensive medical documentation of chronic pain, among other ailments, from Mendez's treating physicians. And the Review Committee did not explain why the difference in the disability definitions or the "more recent" medical documentation should result in different disability determinations. For these reasons, the Review Committee's decision to deny Mendez's claim for long-term disability benefits under the Total Disability definition was arbitrary and capricious.

When "the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled, the appropriate remedy generally is remand to the plan administrator." *Shaw*, 795 F.3d at 551. But when

14

remand "would be a useless formality," *i.e.*, when the objective medical evidence clearly establishes that the claimant "was denied benefits to which he is entitled," the Court may "award[] benefits without remanding." *Id.* at 551-52.

As noted by the Review Committee, Mendez was treated as late as December 2014 for "traumatic brain injury, neck pain, back pain, headaches, leg pain[,] and pelvic pain." (Dkt. 19-1 at 3.)  An "MRI of his back" had revealed that his "L5 is 'compromised.'"  (Dkt. 19-2 at 170; Dkt. 19-3 at 111.)  His treating physician noted that he "clearly cannot stand for more than [thirty] minutes or sit more than [one] hour," "had severe derangement of the pelvic musculature, hip joints[,] and sacral iliac joints," suffers from a "TBI," has "balance problems, walks with assistive devices," and "has limited ambulation endurance."  (Dkt. 19-2 at 212; *see* Dkt. 19-1 at 3.)  He is on Percocet for "frequent muscle spasms in his back that last for several days."  (Dkt. 19-2 at 210; *see* Dkt. 19-1 at 3.)  He is on gabapentin for "burning pain in his left thigh." (Dkt. 19-2 at 210; *see* Dkt. 19-1 at 3.)  He has "[h]ip arthritis," and suffers from "[i]njury of lumbar, sacral[,] and pelvic sympathetic nerves." (Dkt. 19-2 at 210.)

15

In addition to the Percocet and gabapentin noted above, he is also on Prilosec, Neurontin, Maxalt, and Ibuprofen for his pain and Robaxim for his muscle spasms. (*Id.* at 212.) The Review Committee itself summarizes the objective medical evidence by noting that Mendez "has sustained a fractured pelvis, acetabular fractures, is status post open reduction and internal fixation, has a diagnosis of traumatic brain injury and late effects of traumatic brain injury, right AC joint separation, left first rib fracture, neuropathic pain of the bilateral lower extremities, chronic back pain[,] and insomnia." (Dkt. 19-1 at 3.); *see Koning v. United of Omaha Life Ins. Co.*, 627 F. App'x 425, 437-38 (6th Cir. 2015) (noting that "MRIs, records of [] physical examinations, chart notes, lab and other test results, and physician diagnoses, all . . . qualify as objective medical evidence").

Mendez was denied benefits to which he is clearly entitled. Thus, rather than remanding, Aetna is ordered to pay Mendez the long-term disability benefits for which he is qualified under the Total Disability definition of the Plan. *See, e.g., Shaw*, 795 F.3d at 551-52 (ordering award of benefits rather than remanding when claimant could not sit or stand for more than thirty minutes and suffered from back and neck

16

spasms and limited range of motion, among other things) (citing *Caesar v. Hartford Life & Accident Ins. Co.*, 464 F. App'x 431, 436 (6th Cir. 2012); *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 171 (6th Cir. 2007); *Brooking v. Hartford Life & Accident Ins. Co.*, 167 F. App'x 544, 550 (6th Cir. 2006); *Kalish v. Liberty Mut./Liberty Life Assurance Co.*, 419 F.3d 501, 512-13 (6th Cir. 2005)).

## IV.  Conclusion

Plaintiff Mendez's motion for summary judgment (Dkt. 17) is GRANTED.   Defendants FedEx Express's and Aetna's motion for summary judgment (Dkt. 20) is DENIED.

Plaintiff must submit briefing regarding back-due benefits, applicable interest, and any other costs and fees that are appropriate by September 30, 2016.  Defendants may respond within two weeks after plaintiff files such brief, and plaintiff may reply to defendants' response within one week if defendants file such response.

IT IS SO ORDERED.

Dated: August 22, 2016                    s/Judith E. Levy
Ann Arbor, Michigan                       JUDITH E. LEVY
                                          United States District Judge

17

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 22, 2016.


s/Kelly Winslow for
FELICIA M. MOSES
Case Manager

18